**13 CIV 2851**

JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

| | |
|---|---|
| RORIE WEISBERG, Individually And On Behalf Of All Others Similarly Situated, | |
| Plaintiff, | Civil Action No. _____ |
| v. | |
| L'OREAL USA, INC., LANCÔME LUXURY PRODUCTS, LLC, LANCÔME SALES INC., LANCÔME, INC. | **CLASS ACTION COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

-----------------------------------------------------------x

Plaintiff, Rorie Weisberg ("Plaintiff"), alleges, upon personal knowledge as to herself and her own acts, and upon information and belief (based on the investigation of counsel) as to all other matters, as follows:

## NATURE OF ACTION

1.    This action seeks to remedy the unfair, deceptive, and unlawful business practices of Defendants, L'Oreal USA, Inc., Lancôme Luxury Products, LLC, Lancôme Sales Inc. and Lancôme, Inc. (collectively "Defendants" or "Lancôme")[1] with respect to the production, distribution, advertising, marketing and sales of its facial foundation makeup, Teint Idole Ultra 24H (the "Product(s)"). Defendants manufacture, market, sell, and distribute the Product using a marketing and advertising campaign that is centered around the claim that the Product will last for 24 hours on the consumer's skin, regardless of skin type, and stay perfectly flawless (the "24-hour

---

[1] As the precise corporate structure of Defendants is unclear at the time of filing, Plaintiff reserves the right to add additional Defendants should it become necessary as discovery progresses. In addition, because the Products themselves reference Lancôme Luxury Products, LLC, while the advertisements and websites do not appear to, Plaintiff's reference here to one of the Defendants shall not be deemed to exclude any other.

Claim"). However, Defendants' advertising and marketing campaign and labeling claims are false and misleading because the Product does not stay on the skin for 24 hours.

2. As explained more fully herein, Lancôme has made, and continues to make, deceptive and misleading claims and promises to consumers about the efficacy of the Product, in a pervasive, nationwide, marketing scheme that confuses and misleads consumers about the true nature of the Product. In reality, the Product does not live up to the claims made by Lancôme.

3. Lancôme knows this, yet designed its marketing and advertising campaign to include indicia of years of scientific research and testing, special technologies, and references to pending patents, for the sole purpose of misleading and deceiving consumers. As a result, Lancôme misleads consumers with false and misleading promises of results it knows it cannot deliver, and does so with one goal in mind – reaping enormous profits.

4. Through the marketing and sales of the Product, Defendants have worked to convey the singular message: the Product lasts for 24 hours. Each person who has purchased the Product has been exposed to Defendants' misleading advertising message and purchased the Product as a result of that message on the Product labels and/or as part of the advertising.

5. Defendants know that consumers are willing to pay for specialized cosmetics, and have advertised the Product with the intention that consumers rely on the 24-hour Claim and representations made in the advertising and on the Product packaging. Defendants' claims are deceptive and misleading, and have been designed solely to cause consumers to buy the Product. Defendants knew or should have known, at the time they began selling the Product, that it did not last for 24 hours.

6. Plaintiff read and relied on the representations that Lancôme made in its advertising and on the Product itself, namely the 24-hour Claim, when she purchased the Product.

2

Plaintiff and the Class (defined below) paid a premium for the Product over foundations that did not purport to provide 24-hour coverage.

7. By relying on the representations that Defendants' Product would stay on her skin for 24 hours and could, thus, do something that other foundation products could not do, Plaintiff and the Class have been damaged and suffered an ascertainable loss by purchasing the Product, which is sold at an inflated price. Plaintiff did not receive the benefit of the bargain, a foundation that provided 24-hour coverage, when she purchased the Product. Instead, she received a foundation that, in direct contradiction to Defendants' representations, does not provide full 24-hour coverage for her skin.

8. This class action seeks to provide redress to consumers who have been harmed by the false and misleading marketing practices Defendants have engaged in with respect to the Product. Plaintiff asserts claims, on behalf of herself and the Class, for violations of the New York General Business Law §§ 349-50, and for breach of express warranty and unjust enrichment.

9. Through this action, Plaintiff seeks injunctive relief, actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class as a result of Defendants' unlawful conduct.

## PARTIES

10. Plaintiff, Rorie Weisberg, is a resident of Monsey, Rockland County, New York and, thus, is a citizen of New York.

11. Defendant, L'Oreal USA, Inc., is a Delaware corporation with its principal place of business in Berkeley Heights, New Jersey. L'Oreal USA, Inc., therefore, is a citizen of Delaware and New Jersey.

12. Defendant, Lancôme Luxury Products, LLC, is a limited liability corporation with its address in New York and, thus, is a citizen of New York.

13. Defendant, Lancôme Sales Inc., is a Delaware corporation with its principal place of business at 720 Fifth Avenue, New York, NY 10019. Lancôme Sales Inc. is, therefore, a citizen of Delaware and New York.

14. Defendant, Lancôme, Inc., is a Delaware corporation with its principal place of business at 52 Vanderbilt Ave., New York, NY 10017-3808. Lancôme, Inc. is, therefore, a citizen of Delaware and New York.

15. All of Defendants' actions described in this Complaint are part of, and in furtherance of, the unlawful conduct alleged herein, and were authorized and/or done by Defendants' various officers, agents, employees, or other representatives while actively engaged in the management of Defendants' affairs (or that of their predecessors-in-interest) within the course and scope of their duties and employment, and/or with the actual, apparent, and/or ostensible authority of each of the Defendants.

## JURISDICTION AND VENUE

16. The claims asserted herein arise under the laws of the State of New York.

17. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain of the Class members and Defendants are citizens of different states.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because many of the acts and transactions alleged herein occurred in substantial part in this District and Defendants are headquartered in this District.

## FACTUAL ALLEGATIONS

19. Lancôme is a luxury cosmetics house that was founded in France in 1935 by Armand Petitjean. Since 1964, Lancôme has been part of L'Oreal's Luxury Products division, which offers skin care, fragrances, and makeup at higher-end prices.

20. Lancôme's cosmetics are sold at Lancôme counters or department store sections, or over websites, with prominent signage identifying Lancôme as the seller, and the products as Lancôme products. Lancôme products are also packaged in both boxes and a product container that identify them as Lancôme products.

21. Regardless of where Plaintiff and the Class purchased the Product (*i.e.,* on-line directly from Lancôme, in a department store at the Lancôme counter, or from other third-party retailers like Sephora), they were exposed to Lancôme's deceptive and misleading advertising messages and material omissions regarding the efficacy promises of the Product.

22. Department stores are the principal source for higher priced, brand-name cosmetics such as Estee Lauder, Clinique, Chanel, Lancôme and Elizabeth Arden, where these brands are intensely competitive.

23. Such competition is, in part, characterized by claims as to product performance characteristics, which purport to reflect the benefits resulting from the intended use of the products. Product efficacy claims serve the important purpose of helping consumers make informed purchase decisions based upon product differentiation.

24. Customers who purchase cosmetics are heavily reliant on product efficacy claims due to diverse expectations, large choice of product alternatives geared to consumer individuality, and rapid roll out of innovation in response to customer trends and demands.

5

**The Product and Its Advertising**

25.  In or about April 2012, Lancôme introduced a new foundation makeup named Teint Idole Ultra 24H, which it purportedly researched for eight years before introduction into the market. The "24H" stands for 24 hours. Lancôme claims that, following application, the Product will remain flawlessly perfect and unified on the skin for a full 24 hours, without transfer or caking.

26.  Lancôme heavily markets the Product in print media, including the placement of advertisements in such widely circulated magazines as *Glamour*, *Cosmopolitan*, *Vogue*, and *O-The Oprah Magazine*, among others.

27.  Defendants also tout that the Product was a winner of *The Oprah Magazine* Makeup O-ward for 2012.

28.  Lancôme uniformly repeats its pervasive 24-hour Claim on the box in which the Product is sold, on the bottle in which it is sold, and through its pervasive advertising campaign in the media and on the internet.

29.  For example, Lancôme's proprietary website (www.lancome-usa.com) touts the 24-hour Claim. Under the "Details" heading, Lancôme states:

> 24-hour wear for divine, lasting perfection
>
> Following 8 years of research, Lancôme unveils its first 24-hour wear foundation for lasting perfection.
>
> With its new EternalSoft technology, Teint Idole Ultra 24H defeats all challenges. Complexion stays perfectly flawless and unified. Never cakey.
>
> 24-hour divine comfort
>
> In perfect affinity with the skin, Teint Idole Ultra 24H is irresistibly comfortable. Its new, blendable and fresh texture leaves the complexion perfectly smooth, velvety matte with no powdery effect.
>
> **Result**
>
> The full coverage you need – flaws, pores, redness and all imperfections visibly

6

disappear. The velvety finish you love for 24-hour lasting perfection and comfort. Full coverage. Velvety matte finish with no powdery effect.

Oil-free. Fragrance-free. Transfer-free. Non-comedogenic. Tested on sensitive skin. Tested under dermatological control. Patent pending.

http://www.Lancôme-usa.com/Teint-Idole-Ultra-24H/1000554,default,pd.html?cm_mmc=LabeliumSearch-_-GoogleGeneric-_-Foundation-_-24%20hour%20foundation.

30. In addition, under the "Benefits" area of the website, Lancôme represents that the benefits include:

Eternalsoft Polymer – allows increased comfort level with ultra-long wear

NAI pigments – specially coated pigments maintain consistent pH level with skin, so color stays true all day

Perlite and Silica – two of the most effective oil-absorbing ingredients

http://www.Lancôme-usa.com/Teint-Idole-Ultra-24H/1000554,default,pd.html?cm_mmc=LabeliumSearch-_-GoogleGeneric-_-Foundation-_-24%20hour%20foundation

31. The same claims are made on the packaging and bottle of the Product, which refers to "Retouch-free makeup" and "24h wear for a divine, lasting perfection" as well as the "velvety finish you love for 24 hour lasting perfection and comfort."[2]

32. In fact, the 24-hour Claim is false and materially misleading. The Product does not perform as claimed for 24 hours or anywhere near 24 hours.

33. A central theme of Lancôme's deceptive marketing campaign, which permeates throughout its advertisements and Product displays and labels, is that the Product, and the results promised by Lancôme, are supported by years of scientific research and resulting discoveries. Lancôme's marketing campaign highlights the purported years of scientific research, the patents, and testing that, according to Lancôme, supports the promised results.

---

[2] A true and correct copy of a picture of the Product box is attached hereto as Exhibit 1.

7

34. While such science-based claims and use of the term "patent pending" provide Lancôme with an increased level of credibility among unsuspecting consumers, and therefore lead to increased sales, the purported scientific research is simply part of Lancôme's deceptive and misleading advertising campaign.

35. To validate a product efficacy or other performance claims, studies must be comprised of methods that are reliable and reproducible, and must follow well-designed and scientifically valid methodology according to good practices.

36. The process of evaluating a product's performance characteristics proceeds from scientific techniques and efficacy testing, which lead to communication of product efficacy characteristics to customers. While methodologies may vary, a robust and structured approach to the generation of data is required in order to adequately support product communication, *i.e.* claims relating to efficacy and other product benefits. Lancôme's official website manifests an acute appreciation of this claims validation modality; indeed, its personnel have been in the forefront of modern trends in the efficacy evaluation of cosmetic products on a worldwide level.

37. Lancôme does not publish information sufficient to validate its 24-hour Claim, because it has no such information.

**Plaintiff's Experience**

38. Plaintiff is an Orthodox Jew and abides by Jewish law by not applying makeup from sundown on Friday until nighttime on Saturday. As such, Plaintiff often wears the same makeup for at least a 24-hour period between Friday and Saturday evening.

39. In approximately early April of 2013, Plaintiff purchased a 1-ounce bottle of the Product through Lancome's official website for $45.00, plus tax.

40. Plaintiff saw, read and relied on Product efficacy statements made by Lancôme in making her decision to purchase the Product. The efficacy statements relied on by Plaintiff included, for example, the purported, "scientific" research with "new EternalSoft technology," testing claims, and claims that it was "retouch free" and would stay "perfectly flawless" and provide "24 hour lasting perfection and comfort."

41. These false and misleading statements viewed by Plaintiff at Lancome's website were material and influenced her decision to purchase the Product. The 24-hour Claim was central to Plaintiff's purchase decision, as a long-lasting makeup assists with her dual objectives of compliance with religious law and enhancement to her natural appearance. Specifically, Plaintiff's eldest son is having his Bar Mitzva celebration in June and Plaintiff was looking for a long-lasting foundation that would achieve the foregoing dual objectives over the Bar Mitzva Sabbath.

42. After purchasing the Product, Plaintiff decided to test it from sundown Thursday to sundown Friday to see if she liked it and if the Product worked. Plaintiff did so because she did not want to be stuck wearing the Product over the weekend if it did not work. She applied the Product at approximately 5:00 p.m. on a Thursday. Plaintiff felt that the Product make her skin look very cakey. By Friday morning, Plaintiff's skin was shiny, particularly around her nose. Moreover, the Product that had been applied had faded significantly, making Plaintiff's skin look uneven. It looked like very little of the Product was remaining on Plaintiff's face, which was confirmed when she removed the remainder of the Product at 3:00 p.m. with a white cotton ball, where very little of the Product was found on the pad. Based on her experience, Plaintiff did not receive the benefit of longwearing efficacy as claimed by Lancôme in its advertising and on the Product packaging.