43.     Religious law prohibits Plaintiff from applying makeup on the Sabbath, while the Sabbath is the one day of the week when Plaintiff most wants to appear attractively made up. As such, the 24-hour Claim was material to Plaintiff, who purchased the Product specifically in order to achieve the promised 24-hour "longwear." Similarly, consumers who cannot themselves apply makeup and need daily help (*e.g.* nursing home and assisted living residents) to assist them in the task, have the need for long-wearing makeup, as does the person who applies makeup early in the morning but will not have an opportunity to reapply makeup prior to a dinner or other evening engagement. All of such persons, and others, reasonably seek a long-wear makeup and could reasonably be expected to purchase the Product because Defendants have represented that the Product produces, on all skin types, a freshly made-up appearance for 24 hours.

44.     Additionally, there are a plethora of online reviews to the effect that, contrary to the 24-hour Claim, the Product breaks down, bronzes, cakes, requires touch-up and otherwise fails to maintain affinity with the skin for more than one-half the claimed period of "divine, lasting perfection."

45.     Lancôme knew that the Product's promised results are not possible, *i.e.*, its foundation will not provide the promised 24-hour, longlasting results.

46.     In addition to its affirmative misrepresentations and false advertising, Lancôme fails to disclose that its Product does not perform as promised.

47.     Until such time as Lancôme ceases to engage in deceptive and misleading advertising and sale of the Product, Plaintiff and the Class will continue to be harmed.

48.     Plaintiff and Class members suffered an ascertainable loss and damage, in the amount of the price of the Product, as a result of the improper actions described herein because the Product does not last for 24 hours, as Defendants claim.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action on behalf of herself and all other persons similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

50.    The Class and Sub-Class (collectively "Classes") that Plaintiff seeks to represent are defined as follows:

> **Nationwide Class:**
>
> All persons who purchased Teint Idole Ultra 24H, not for resale, within the United States ("Class").
>
> **New York § 349 Sub-Class:**
>
> All persons who purchased Teint Idole Ultra 24H, not for resale, within the State of New York ("New York Sub-Class").

Excluded from the Classes are (a) Defendants, including any entity in which Defendants have a controlling interest, and their representatives, officers, directors, employees, assigns and successors; (b) any person who has suffered personal injury or is alleged to have suffered personal injury as a result of using the Product; and (c) the Judge to whom this case is assigned.

51.    **Numerosity/Impracticability of Joinder:** The members of the Classes are so numerous that joinder of all members would be impracticable.  The proposed Classes include, at a minimum, thousands of members.  The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody and control or otherwise obtained through reasonable means.

52.    **Commonality and Predominance:** There are common questions of law and fact which predominate over any questions affecting only individual members of the Classes.  These common legal and factual questions, include, but are not limited to the following:

11

a.      whether Lancôme engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of the Product;

b.      whether Lancôme's acts and omissions violated New York General Business Law, Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349-50, and breached express warranties;

c.      whether Lancôme made material misrepresentations of fact or omitted material facts to Plaintiff and the Classes regarding the marketing, promotion, advertising and sale of the Product, which material misrepresentations or omissions operated as fraud and deceit upon Plaintiff and the Classes;

d.      whether Lancôme's false and misleading statements of fact and concealment of material facts regarding the Product were intended to deceive the public;

e.      whether, as a result of Lancôme's misconduct, Plaintiff and the Classes are entitled to equitable relief and other relief, and, if so, the nature of such relief; and

f.      whether Plaintiff and the members of the Classes have sustained ascertainable loss and damages as a result of Lancôme's acts and omissions, and the proper measure thereof.

53.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes she seeks to represent. Plaintiff and all Class members have been injured by the same wrongful practices in which Defendants have engaged. Plaintiff's claims arise from the same

12

practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

54.    **Adequacy:**  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained Class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor her attorneys have any interests which are contrary to or conflicting with the Classes.

55.    **Superiority:**  A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member resulting from Defendants' wrongful conduct are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  In addition, Lancôme has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Classes as a whole is appropriate.

13

56.     Plaintiff will not have any difficulty in managing this litigation as a class action.

**FIRST COUNT**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW**
**(Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349-350 on behalf the Classes)**

57.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

58.     Lancôme's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under the New York General Business Law, Deceptive Acts and Practices, N.Y. Gen. Bus. Law §§ 349-50 ("NYGBL"), which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

59.     The practices of Lancôme, described throughout this Complaint, were specifically directed to consumers and violate the NYGBL for, *inter alia*, one or more of the following reasons:

> a.      Lancôme engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff and the Classes about facts that could not reasonably be known by them;

> b.      Lancôme failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

> c.      Lancôme caused Plaintiff and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

> d.      Lancôme failed to reveal material facts to Plaintiff and the Classes with the intent that Plaintiff and the Class members rely upon the omission;

14

e.      Lancôme made material representations and statements of fact to Plaintiff and the Classes that resulted in Plaintiff and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

f.      Lancôme intended that Plaintiff and the other members of the Classes rely on its misrepresentations and omissions, so that Plaintiff and other Class members would purchase the Product; and

g.      Lancôme knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, 24-hour use, when Lancôme knew that the Product did not work as promised.

60.     Under all of the circumstances, Lancôme's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

61.     Lancôme's actions impact the public interest because Plaintiff and members of the Classes were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Lancôme's generalized course of deception.

62.     By committing the acts alleged in this Complaint, Lancôme has misled Plaintiff and the Classes into purchasing the Product, in part or in whole, due to an erroneous belief that the Product will maintain affinity with the skin for 24 hours without the need for touch up.  This is a deceptive business practice that violates NYGBL § 349.  The coordinate advertising violates NYGBL § 350.

63.     Lancôme's 24-hour Claim misled Plaintiff, and is likely in the future to mislead reasonable consumers.  Had Plaintiff and other members of the Classes known of the true facts

15

about the Product's failure to work as promised, they would not have purchased the Product or paid substantially less for the Product.

64.      The foregoing acts, omissions and practices set forth in connection with Defendants' violations of NYGBL § 349 and § 350 proximately caused Plaintiff and other members of the Classes to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Product, and are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs of suit.

**SECOND COUNT**
**BREACH OF EXPRESS WARRANTY**
**(On behalf of the Nationwide Class)**

65.      Plaintiff incorporates the allegations set forth above as if fully set forth herein.

66.      As an express warrantor, manufacturer and merchant, Lancôme had certain obligations under N.Y.U.C.C. § 2-313 to conform the Product to its express warranties.

67.      Plaintiff, and each member of the Class, formed a contract with Lancôme at the time they purchased the Product. The terms of that contract include the promises and affirmations of fact made by Lancôme on the labels of the Product and through the advertising and marketing campaign, as alleged above. The Product labeling and advertising constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class, on the one hand, and Lancôme, on the other.

68.      All conditions precedent to Lancôme's liability under the warranty have been performed by Plaintiff and the Class, except as may have been excused or prevented by the conduct of Lancôme or by operation of law in light of Defendants' unconscionable conduct described throughout this Complaint.

69.     Lancôme breached the terms of the express warranty by not providing a Product that provided the benefits promised.

70.     Lancôme received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

71.     In addition, Lancôme has received, on information and belief, numerous complaints and other notices from consumers advising them of the failure of the Product to meet the promised 24-hour Claim.

72.     As a result of Lancôme's breach of warranty, Plaintiff and the Class have been damaged in the amount of the purchase price of the Product.

**THIRD COUNT**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class)**

73.     Plaintiff incorporates the allegations set forth above as if fully set forth herein.

74.     It would be inequitable for Lancôme to be allowed to retain the benefits which Lancôme was aware of, and which it obtained from its fraudulent misrepresentations and false advertising and labeling, at the expense of Plaintiff and members of the Class.

75.     Plaintiff and members of the Class are entitled to the establishment of a constructive trust upon the benefits to Lancôme from the unjust enrichment and inequitable conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, prays for judgment against Defendants granting the following relief:

A.      An order certifying this case as a class action and appointing Plaintiff as Class representative and Plaintiff's counsel to represent the Classes;

17

B.      Restitution and disgorgement of all amounts obtained by Lancôme as a result of

its misconduct, together with interest thereon from the date of payment, to the victims of such

violations;

C.      All recoverable compensatory and other damages sustained by Plaintiff and the

Classes;

D.      Actual and/or statutory damages for injuries suffered by Plaintiff and the Classes

and in the maximum amount permitted by applicable law;

E.      An order (1) requiring Lancôme to immediately cease its wrongful conduct as set

forth above; (2) enjoining Lancôme from continuing to misrepresent and conceal material

information and conduct business via the unlawful, unfair and deceptive business acts and

practices complained of herein; (3) ordering Lancôme to engage in a corrective advertising

campaign; and (4) requiring Lancôme to reimburse Plaintiff and all members of the Classes the

amounts paid for the Product;

F.      Statutory pre-judgment and post-judgment interest on any amounts;

G.      Payment of reasonable attorneys' fees and costs; and

H.      Such other relief as the Court may deem just and proper.


DATED: April 30, 2013

Jeffrey S. Feinberg, Esq.
The Feinberg Law Firm
The Woolworth Building
233 Broadway - Suite 2701
New York, New York 10279
Telephone:  (212) 372-0297
Facsimile:  (646) 417-7890
Email:  jfeinberg@nfcounsel.com

Mark Schlachet
3637 South Green Road, 2nd Floor
Cleveland, OH 44122
Telephone:  (216) 896-0714
Facsimile:  (216) 514-6406
Email: mschlachet@gmail.com

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER &
  SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone:  (856) 858-1770
Facsimile:  (856) 858-7012
Email: jshah@sfmslaw.com
         nfinkelman@sfmslaw.com

John F. Edgar
EDGAR LAW FIRM LLC
1032 Pennsylvania Ave.
Kansas City, MO 64105
Telephone:  (816) 531-0033
Facsimile:  (816) 531-3322
Email: jfe@edgarlawfirm.com